STATE MORTGAGE CORPORATION V. MRS. MAUD B. TRAYLOR.

Application No. 17938.  Decided March 4, 1931.
(36 S. W., 2d Series, 440.)

*Thompson, Dilworth & Marshall, N. W. Palmer* and *Fred Russi,* for plaintiff in error.

*Dave Watson* and *Nelson Lytle,* for defendant in error.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

This case is before us on application for writ of error.  We have concluded that the district court and the Court of Civil Appeals entered cor-

rect judgments, and that the application for the writ should be refused. Our reason for this conclusion will now be stated.

The opinion of the Court of Civil Appeals is reported (32 S. W. (2d) 887), and a complete statement of the case is unnecessary. The suit was filed by the plaintiff in error, the State Mortgage Corporation, in one of the district courts of Bexar county, against Mrs. Maude B. Traylor and other parties to remove cloud and quiet title to certain real estate in Bexar county in the plaintiff in error. The parties answered, and after formal answer the defendant in error, Mrs. Maude Traylor, stated in substance that she was the owner of the property and had good title to it; that the plaintiff's claim was a cloud upon her title, and she prayed for its removal. She also alleged that the plaintiff claimed the property under a chain of title commencing with certain foreclosure proceedings had by the state of Texas in a tax suit in the district court of Bexar county. She asserted that the tax judgment and proceedings thereunder were void. Upon trial in the district court judgment was entered in favor of Mrs. Traylor for title and possession of the land in controversy, which judgment was affirmed by the Court of Civil Appeals. The trial court made elaborate findings of fact and law, which were adopted by the Court of Civil Appeals. That court made a very brief, clear statement of the facts, and we will adopt its statement, with such additional facts taken from the findings of the trial court as may be necessary in this opinion. The statement of the Court of Civil Appeals in part is as follows:

"The facts established are, that there were two C. H. Browns, one of whom lived and died in Bexar County, and the other lived in Calhoun County at the time he acquired the land, in which county his deed to the same recited his residence to be. He moved from Calhoun County to Kerr County, where he died. He never lived in Bexar County.

"The other C. H. Brown lived in Bexar County all the time and died in that county, but before he died was served with process in said suit in Bexar County, for the taxes alleged to be due the State and County. He ignored the service of citation served on him and paid no atention thereto because he did not own the land, and the other C. H. Brown, the owner of the land, who lived in Calhoun County and Kerr County, was never served, was never a party to the judgment and had no knowledge of the tax suit or the judgment. The citation shows upon its face that it was made upon the C. H. Brown living at 317 Roseborough, San Antonio, Texas, whose name was so listed in the City Directory, and who paid no attention to the citation. Neither C. H. Brown, who lived and died in Kerrville, nor his wife, Lara Brown and Mrs. Maude B. Traylor, had any notice or knowledge of the tax suit and judgment until a long time after the attempted sale of the property under the pretended tax judgment.

"Mrs. Maude B. Traylor claims title to the property under deed

from Mrs. Lara Brown, survivor of the community estate of C. H. Brown, who died at Kerrville. * * *

"The order of sale and sheriff's deed recites that notice was mailed to C. H. Brown, 307 Roseborough, as defendant.

"It was shown that C. H. Brown, the owner of the property when tax suit was filed, was at the time of his purchase of the lots a resident of Calhoun County, Texas, which is so recited in his deed of record in Bexar County, Texas. That said C. H. Brown resided in Calhoun County for a year or two after he acquired title to the lots in controversy, when he moved to Kerr County, Texas, and at all times thereafter was a resident of Kerr County, Texas, where he went on account of having developed tuberculosis and was an invalid confined to his room and bed. And that he was continuously so confined for several years from the time he moved there until the time of his death."

In addition to the foregoing, the facts found show that the petition in the tax foreclosure suit alleged that the residence of C. H. Brown, the defendant in that suit, was in Bexar county. The judgment recites that "the defendant, although duly cited, came not but wholly made default," etc. The judgment does not show the residence of the C. H. Brown against whom it was entered.

The insistence of the plaintiff in error is that the defense and cross action of Mrs. Traylor involves a collateral attack on the judgment rendered in the tax foreclosure suit under which it claims, and are therefore not admissible in this case. It is obvious that Mrs. Traylor's defense and cross action for affirmative relief do not make a direct assault upon the tax foreclosure decree, and in that sense they do constitute a collateral attack on the judgment. 15 Ruling Case Law, pp. 838, 839, secs. 311, 312; Freeman on Judgments (5th ed.), vol. 1, secs. 304, 306; Black on Judgments (2nd ed.), vol. 1, sec. 252. However, it does not follow that Mrs. Traylor cannot assert her title in this action, for reasons now to be stated.

This court has always held that a judgment rendered against a defendant without citation or service upon him, or appearance by him, is a nullity. Levy v. Roper, 113 Texas, 356, 360, 256 S. W., 251. However, in cases where the judgment is rendered without citation and service in fact, but recites that service was had, we do not permit the defendants not served to attack or impeach the verity of the judgment in a collateral proceeding. This rule has been adopted, not because the judgment is valid, but because, as a matter of public policy, in the interest of the sanctity of court decrees, we require the defendant to bring a direct action to set aside the judgment because of its invalidity. Levy .v. Brown, 113 Texas, 356, 360, 361, 256 S. W., 251. The rule just stated obtains where the judgment itself declares that service was had, or that the defendant appeared, and where, of course, the judgment roll does not on

its face carry the evidence of its own infirmity. However, in the instant case the rule has no application. The judgment in the tax foreclosure suit entered a decree against "the defendant C. H. Brown", after having recited that "the defendant, although duly cited, came not", etc.

In this case, because of the fact that there were two men of exactly the same initials and name, one living in the county where the land was situated, the other, the real owner, living in a different county, and the judgment itself failing to recite the place of residence of the defendant, and containing nothing to show which person was intended to be affected by it, is necessarily ambiguous as to which person was bound thereby.

In the case of ambiguous judgments, the rule is elementary in this state that recourse may be had to the pleadings to ascertain against whom the decree runs. Dunlap v. Southerlin, 63 Texas, 38, 42; Hays v. Yarbrough, 21 Texas, 487; Hamilton v. Ward, 4 Texas, 355, 361; Craddock v. Edwards, 81 Texas, 609, 613; Croom v. Winston, 18 Texas Civ. App., 1, 43 S. W., 1072, 1074 (writ refused); Texas Savings-Loan Assn. v. Banker, 26 Texas Civ. App., 107, 61 S. W., 724 (writ refused); Richardson v. Trout (Texas Civ. App.), 135 S. W., 677, 679 (writ refused).

In the case of Dunlap v. Southerlin, supra, the suit was brought by John M. Southerlin, William T. Southerlin, James R. Warren, and James F. Callaway, composing the firm of Southerlin, Warren and Company. The judgment actually entered simply ran in favor of "the plaintiff" and against *"the defendant"*, but the caption read: *"L. S. Southerlin v. S. M. Dunlap"*. There was nothing in the record which connected *L. S. Southerlin* with the case except his name in the caption of the judgment. This court, in an opinion by Chief Justice Stayton (then Associate Justice), held the judgment in favor of *L. S. Southerlin* void, and in so doing stated the entire record could be examined to ascertain *the parties in favor of or against whom* the judgment was rendered. In part Chief Justice Stayton said:

· "Every judgment, when ambiguous as to the party or parties in favor of or against whom it is rendered, must be read in the light of the entire record in the case, which, in the sense here used, embraces the pleadings. Wilson et al. v. Nance et al., 11 Humph. (Tenn.), 191; Fowler v. Doyle, 16 Iowa, 535; Bell v. Massey & Poultney, 14 La. Ann., 831; Leviston v. Swan, 33 Cal., 484; Finnagin v. Manchester, 12 Iowa, 522; Beers v. Shannon, 75 N. Y., 297; Hays v. Yarbrough, 21 Texas, 489; Little v. Birdwell, 27 Texas, 682.

"The judgment is in favor of the plaintiff; such is not shown to have been L. S. Southerlin. The cause of action was one which accrued to the persons whose names were given as the plaintiffs in the petition, and there is nothing to show that any other person had any interest whatever in it.

The persons who are to have execution are designated by the words 'they' and 'their'.

"Looking to the whole record, there can be but little, if any, doubt that the name L. S. Southerlin was inserted in the caption to the judgment through inadvertence.

"*A judgment rendered against a person not before the court would be void,* and it is not perceived that a judgment against a defendant in court at the suit of named plaintiffs, upon a cause of action accruing to them alone, in favor of a person in no manner a party to the action, can stand upon any higher ground.

"Courts have no more power, until their action is called into exercise by some kind of pleading, to render a judgment in favor of any person than they have to render judgment against a person until he has been brought within the jurisdiction of the court in some method recognized by law as sufficient; and it never will be presumed, in the face of a record which shows that certain named plaintiffs were seeking and entitled to a judgment, that the court rendered a judgment in favor of some person not shown to be before it seeking relief." (Italics ours).

An examination of the pleadings in the tax foreclosure suit here involved shows that *C. H. Brown of Bexar County* was the C. H. Brown who was sued. It is obvious then that the "defendant" referred to in the judgment as "the defendant C. H. Brown" and "the defendant, although duly cited, came not", was the defendant named in the petition,—that is, *C. H. Brown of Bexar County.* Moreover, we are of the opinion that other portions of the record may be examined for the purpose of ascertaining the person against whom the judgment was entered. Dunlap v. Southerlin, supra; Freeman on Judgments (5th Ed.), vol. 1, secs. 77, 80, 81, 82; 15 Ruling Case Law, p. 895, sec. 374; Little v. Birdwell, 27 Texas 689, 692; authorities supra.

The general authorities support the statement made by Chief Justice Stayton that in case of ambiguity as to the parties to a judgment, the "*entire record in the case*" may be examined for the purpose of determining against whom or in whose favor the decree was rendered. Mr. Freeman in the sections from his work in part says:

"If the entry of a judgment is so obscure as not to express the final determination with sufficient accuracy, reference may be had to the pleadings and to the entire record. If, with the light thrown upon it by them, its obscurity is dispelled, and its intended signification made apparent, it will be upheld and carried into effect. In case of doubt regarding the signification of a judgment, or of any part thereof, the whole record may be examined for the purpose of removing the doubt. One part of the judgment may be modified or explained by another part; and uncertainties in the judgment may become certain under the light cast upon them by the pleadings or other parts of the record. * * * So the uncertain or

general designation of the persons for or against whom the judgment is rendered, as where they are referred to merely as plaintiffs or defendants, may be made certain and definite by reference to the remainder of the record where this clearly indicates the persons intended to be affected." Freeman on Judgments, supra, sec. 77.

The text recited also stated:

"The designation of the parties for and against whom the judgment is given must in all cases be sufficient to enable the clerk to know at whose instance to issue execution, and against whose property it may be properly enforced. Hence a judgment for or against the captain and master of the steamer 'Mollie Hamilton' or the legatees of Philip Joseph, or against a defaulting witness by his proper name, but not stating in whose favor, is insufficient, if the whole record or judgment-roll does not clearly disclose the parties for and against whom the judgment is given. On the other hand, it is equally well settled that the names of the parties need not be stated in the body of the judgment if they are otherwise indicated in some other way which is sufficiently certain. The name of the firm may be given, instead of the names of its individual members, or the parties may be designated generally as the plaintiffs or the defendants, provided a reference to the caption, or to the *pleadings, process, and proceedings in the action, makes certain the names of the parties thus designated.*" (Italics ours). Freeman on Judgments, supra, sec. 80.

Again Mr. Freeman says:

"It has already been seen that uncertainties or ambiguities in the judgment may often be cleared up and its apparent scope and effect limited or controlled by the remainder of the record, and that this principle is applied to general terms designating the parties. Thus the fact that the plural 'defendants' is used does not prevent a construction of the term to exclude some of them where other portions of the record require it. Though the judgment purports to be against the defendants, without naming them, only one of them will be bound, if it appears from the context that only he was meant, *or from the return of the service of process* that only he was brought within the jurisdiction of the court.

"In all cases where the expression in the judgment is general, it will be confined to the parties served with process. Thus where there are two defendants, one of whom is served with process and pleads, and the judgment entry recites that the parties came by their attorneys, it will be intended that no one came but he who had been summoned and had pleaded." (Italics ours). Freeman on Judgments, supra, sec. 81.

The authority cited continues:

"As elsewhere suggested, every judgment may be construed and aided by the entire record. This is true with respect to errors and uncertainties in the names of the parties in rendering or entering judgment, which

are ordinarily regarded as merely clerical when they may be corrected in this way." Freeman on Judgments, supra, sec. 82.

In view of the authorities just referred to and quoted from, we are of the opinion that the trial court was justified in examining not only the petition filed in the tax suit, but the process issued and the return thereon, for the purpose of ascertaining who was actually sued and served with citation. This conclusion in no manner conflicts with that of this court in the case of Treadway v. Eastburn, 57 Texas, 209, where an altogether different question was presented. An examination of the record shows that the citation in the tax suit was issued against *C. H. Brown of Bexar County,* and *C. H. Brown of Bexar County* was the C. H. Brown actually served.

On the judgment in the tax foreclosure suit an order of sale was issued and sale made, and the property purchased in by a remote vendor of the plaintiff in error. The order of sale and sheriff's deed referred to recite that notice was mailed "to C. H. Brown, 307 Roseborough" as defendant. 307 Roseborough is, and was then, a residence in the city of San Antonio, Texas, and was occupied by a man by the name of C. H. Brown. So, then, there can be no doubt whatever that *C. H. Brown of Bexar County* was the party against whom the state's tax suit was brought, was the C. H. Brown to whom citation issued and who was served with process, against whom judgment was decreed in that suit, and whose title, if any he had, was divested out of him by the sale of the property for taxes and its purchase by the vendor of the plaintiff in error. On the other hand, it is equally certain that *C. H. Brown of Kerr County,* formerly of Calhoun county, who actually owned the land, was not sued, was not named as a party defendant in the petition, had no process issued for him, was not cited, and had no judgment whatever entered against him; that he knew nothing of the suit, did not appear, and was in truth and in fact a stranger to the judgment, the validity of which is invoked against the vendee of his community survivor.

The rule is an elementary one that strangers to a judgment, that is those who are not parties or privies to the proceedings, may, when their interests are adversely affected by the judgment, impeach it whenever it is attempted to be enforced against them. They may not, of course, avoid it for a mere error or irregularity, but they may collaterally attack it where it is void as to the party making the attack for want of jurisdiction, as in this case. Freeman on Judgments (5th Ed.), vol. 1, secs. 317, 318; Black on Judgments (2d Ed.), vol. 1, secs. 260, 278; Sanger Bros. v. Trammell, 66 Texas, 361, 1 S. W., 378; Ferrell-Michael Ab. & Tr. Co. v. McConnoe (Texas Civ. App.), 184 S. W., 1081, 1089; Turner v. Maury (Texas Civ. App) (writ refused), 224 S. W., 255, 258.

We are of the opinion, as stated above, that *C. H. Brown of Kerr County* was a stranger to the judgment rendered in Bexar county against

*C. H. Brown of Bexar County;* that the judgment was and is not binding on him, and was and is not binding on Mrs. Traylor, who holds under him. 15 Ruling Case Law, p. 849, sec. 323, pp. 839, 840, secs. 312, 314; Flowers v. King, 145 N. C., 234, 122 Amer. State Rpts., 444; Schneidman v. Noble, 75 Iowa, 120, 9 Amer. State Rpts., 467; Savings Bank of St. Paul v. Authier, 52 Minn., 98, 18 L. R. A., 498; Coffin v. Bell, 22 Neb., 169, 58 Amer. State Rpts, 738; Scales v. Wren, 103 Texas, 304, 127 S. W., 164; Green v. Robertson, 30 Texas Civ. App., 236, 70 S. W., 345 (writ refused); Freeman v. Hawkins, 77 Texas, 498, 14 S. W., 364; McRee v. Brown, 45 Texas, 503; Wolfford v. Booker, 10 Texas Civ. App., 171, 30 S. W., 67.

In the case of Scales v. Wren, supra, decided by the Supreme Court, Wren brought suit in the District Court of Hartley county against Scales and others, for trespass to try title to 175 acres of land. Wren had a regular chain of transfers from the state down to himself, all of which were recorded. The deed to Wren stated that he was a resident of Travis county, just as in the case before us the deed to C. H. Brown, subsequently of Kerr county, stated that his place of residence at the time of the execution of the deed was in Calhoun county. In the Wren case, Scales defended under a title derived from a sale of the property under a judgment for taxes against "the unknown owner". The Supreme Court held that the tax judgment was void as to Wren, that the suit and judgment against "the unknown owner" did not conclude nor bind Wren, the real owner, whose place of residence was Travis county. In part the Supreme Court, through Chief Justice Gaines, said:

"The statute authorizes a suit against the 'unknown owner' of the land, and not against an owner who is known, and whose name and residence could have been discovered upon proper inquiry. Hence a judgment against the unknown owner does not conclude the title of one who is known, or can be known. No one can doubt that the judgment is conclusive as between the state and the unknown owner; but here we have a case in which the owner was known, or could have been known by the slightest diligence. The known owner is entitled to his day in court, and to be heard on defense of his rights. He is entitled to service of citation if he be within the jurisdiction of the court. Not having been served with process, and being within the jurisdiction of the court, and not being an unknown owner, he was not a party to the proceedings, and we fail to see how he can be concluded by the judgment."

Ruling Case Law states the rule as follows:

"Even where there is service of process it must be substantially in accordance with the requirements of the law, and when the service of process is insufficient and unauthorized by law, the court does not acquire jurisdiction, and the judgment rendered is without validity, force or effect, as, for example, *where notice is served on the wrong person, although of*

*the same name as the defendant,* even if the party served on discovering the mistake mails to the defendant the copy of the summons served upon him, with a letter explaining the matter." (Italics ours). 15 Ruling Case Law, p. 849, sec. 323.

In the case of Freeman v. Hawkins, cited above, Mrs. Freeman prior to her marriage had acquired certain real estate by deed, executed in her maiden name of *Mary E. Robinson.* Some time after her marriage, however, to Mr. Freeman, the vendor of Hawkins brought suit in the county where the land was situated against *Mary E. Robinson.* Service was had in that suit by publication, and judgment rendered in favor of the plaintiff in the action against "Mary E. Robinson". This court in a subsequent suit between the vendee of the plaintiff in that action and Mrs. Freeman held that Mrs. Freeman was not bound by the judgment, in part said:

"We are of opinion that a citation by publication requiring 'Mary E. Robinson' to be cited and to appear was not sufficient to give the court jurisdiction to render a judgment that would bind 'Mary E. Freeman'. McRee v. Brown, 45 Texas, 506.

"If there had been actual service on Mrs. Freeman under the name of 'Mary E. Robinson' it might have been her duty to appear, even though cited in the wrong name and although her husband was not made a party defendant with her; but the case before us is one in which she was only cited by publication, issued on the ground that she was a nonresident of the State, which was untrue. She had no knowledge of the pendency of the suit against 'Mary E. Robinson' or opportunity to defend it. She was not a party to the suit and is not bound by the judgment, and it should not have been admitted for any purpose. Dunlap v. Southerlin, 63 Texas, 38."

In the case of Green v. Robertson, cited above, in which writ of error was refused, the Court of Civil Appeals held that a judgment for taxes against the unknown heirs of a former owner is void as to the owner under grant from the deceased who had no notice of the suit, and was subject to collateral attack. The facts were briefly as follows: Prior to September 26, 1903, *John C. Robertson* and wife owned the land. On that date, however, they conveyed to their son *H. G. Robertson,* but the deed was not filed for record until December 1, 1900. In 1898, after the death of John C. Robertson, a tax suit was brought against "the unknown heirs of *John C. Robertson*" for taxes due for the years 1889 and 1894, and judgment entered for the taxes and foreclosing the lien. The land was sold for taxes under this judgment, and bought in by certain parties who subsequently conveyed to Green and another for a substantial consideration. The Court of Civil Appeals held the judgment void and subject to collateral attack by *H. G. Robertson,* the real owner of the land. In part the court said:

"It is true that the judgment in the tax suit was a judgment against

the land, and was rendered by a court of competent jurisdiction of the subject-matter of the suit, but this does not make it a valid judgment against the owner of the land, who was not made a party to the suit, and had no notice that such suit was pending until long after the judgment therein was rendered. The undisputed evidence shows that, at the time the tax suit was filed, defendant in error was the owner of the land. The delinquent tax record of Anderson county, upon which the suit was brought, designates defendant in error as the owner; and yet he was not made a party to the suit, and no notice of any kind was given him of its institution. * * * We think it clear that a judgment for taxes against the unknown heirs of John C. Robertson is absolutely void as to the owner of the land against which the taxes were adjudged, who had no notice of the suit, and who owned the land, not as an heir of John C. Robertson, but by purchase long prior to the bringing of the suit. * * * It is unnecessary to cite authority upon the general proposition that no person can be held bound by a judgment in a suit to which he was not a party, and of which he had no notice. To hold otherwise would be in violation of a fundamental principle of our system of jurisprudence, and in direct conflict with the constitutional provision which guaranties that no person shall be deprived of property except by due course of law. The defendant in error, not being a party to the suit in which the judgment of foreclosure was rendered against his land, is not bound by such judgment. *As to him, such judgment is void, and the rule which forbids a collateral attack upon the judgment of a court of competent jurisdiction had no application, for the reason that no court has jurisdiction competent to establish a lien upon the property of a person who is not a party to the suit in which such lien is sought to be fixed, and is not given an opportunity to be heard in defense of his property rights."* (Italics ours).

In the case of McRee v. Brown, 45 Texas, supra, this court held that a citation by publication of *McKee* would not support a judgment against *McRee*. In that case Associate Justice Moore, in the opinion for the court, in part said:

"While it is undoubtedly true, as was said by Justice Lipscomb in the case of M'Clelland v. Smith, 3 Texas, 210, that the stringency with which the rule as to a variance between the cause of action declared on and the evidence offered to support it has been greatly relaxed by the more recent decisions, in the English as well as American courts, from the rigidity with which it was formerly adhered to and enforced, yet we have been cited by the defendant in error to no case, and we think none can be found, which will sustain a judgment by default against Robert McRee, on citation by publication to Robert McKee. There is, indeed, in our opinion, a palpable distinction and marked difference in the question presented by the objection of variance between the instruments offered in evidence and described in the pleading and that which has to be determined,

when it is claimed that the party against whom judgment has been rendered by default is not the same person to whom citation was issued and upon whom constructive service has been made by publication."

The case of Flowers v. King, supra, from the Supreme Court of North Carolina, is directly in point. In that case it appears that the facts found by the judge on the hearing that the defendant had been ejected from a piece of land by virtue of final process of the court, issued on a judgment by default in the case, the original process having been served on a different man of the same name as the defendant. In regard to service on the defendant, the court found the facts to be that the summons had never been served upon the real defendant, Lewis King, a negro, and that Lewis King had never entered an appearance in the suit, either in person or by an attorney, and had no knowledge of the action until the writ of possession was served upon him. The Supreme Court held that the judgment was absolutely void, and could be set aside on motion of the defendant, or treated as a nullity whenever the lack of jurisdiction was made to appear. In part the court said:

"On these facts it is well established with us that the judgment against the defendant is absoutely void, and may be set aside on motion of defendant, or treated as a nullity when and wherever the entire lack of jurisdiction is made to appear. Card v. Finch, 142 N. C., 140, 54 S. E., 1009; Carter v. Rountree, 109 N. C., 29, 13 S. E., 716; Doyle v. Brown, 72 N. C., 393; Deep River Copper Co. v. Martin, 70 N. C., 300; Black on Judgments, sec. 307."

The authorities cited are conclusive of the question that the tax judgment and proceedings thereunder were void as to *C. H. Brown of Kerr County;* and being void as to him, the plaintiff in error has no title whatever to the property involved. Since Mrs. Traylor holds the title of *C. H. Brown of Kerr County,* she is in the same position to show the void character of plaintiff in error's title as Brown would be, were he living. 15 Ruling Case Law, p. 839, sec. 312; Freeman on Judgments (5th Ed.), vol. 1, secs. 318, 319, 322; Coffin v. Bell, 22 Nev., 169, 39 Pac., 240, 58 A. S. R., 738, 741; People v. Mullan, 65 Calif., 396.

The Court of Civil Appeals discussed other questions disposed of by the trial court, but since we have concluded that the title of Mrs. Traylor is superior to that of the State Mortgage Corporation, which rests upon a judgment not binding upon *C. H. Brown of Kerr County,* through whom she claims, we have found it unnecessary to consider any other question in the case.

For the reason stated, the application for writ of error is refused.